7798

## TOUCHBERRY v. NORTHWESTERN R. R. CO.

1. PUNITIVE DAMAGES—RAILROADS.—Evidence tending to show a railroad company was informed by plaintiff that it was injuring his lands and that it did nothing to prevent such injury warrants sending issue of punitive damages to the jury.

2. EVIDENCE—IBID.—SECTION MASTER.—There being testimony that a section master is charged with keeping the roadbed in repair, conversations with him relating to damage to lands of plaintiff by ponding water thereon are competent as tending to show notice to the company of injury to plaintiff.

3. IBID.—PLEADINGS.—Where an original complaint is put in evidence it is not error to refuse to admit in evidence demurrers thereto, amended complaint and orders on the ground that they contained admissions of the plaintiff advantageous to defendant, the only admission being that the complaint was demurrable.

4. IBID.—There was no error in construing the allegations of the complaint to admit evidence that plaintiff's family were made sick by reason of ponding water on his lands.

MR. JUSTICE WOODS *thinks there was no evidence of wantonness or wilfulness.*

Before SEASE, J., Clarendon, October term, 1909. Affirmed.

Action by E. J. Touchberry against Northwestern Railroad Company of South Carolina. Defendant appeals on the following exceptions:

I. "Because the presiding Judge erred in submitting the question of punitive damages to the jury, there being no evidence whatsoever in the whole case upon which to base a verdict for punitive damages, and erred for that reason in refusing the defendant's request not to submit the case as to punitive damages to the jury, which request was as follows:

" 'There is no evidence of gross negligence, or that any act complained of was done with malice, or wilfully, or in utter wanton disregard of the plaintiff's rights, and the jury cannot give any punitive damages.'

"And there was error on the part of the presiding Judge in refusing to set aside the verdict as to punitive damages; and there was error further in holding, in reference to punitive damages, in refusing a motion for a new trial, that the conversation between Mr. Thomas Wilson and Mr. Touchberry (J. W.), before the action was commenced, was sufficient to submit the case to the jury on the question of puni-tive damages, the conversation being as follows:

"Questions submitted to Mr. J. W. Touchberry by Mr. DuRant, in reference to the conversation purported to have been had by Mr. Touchberry with Mr. Wilson, and answers to same:

" 'What did you say to him and he to you? I asked him—he got off loading some cars and I said to him, "Captain"—I went up and introduced myself to him, and said, "Would you mind to walk a little piece and let me show it to you," and he said, "Certainly," and he walked down and took a view of the water on each side and looked at the well, and we talked and knocked around a little bit, and he looked down at the branch, and said, "Whenever you canal the branch I will put the drainer there," and he walked off. Did you ask him to put an opening there? Yes, sir; I asked him to put an opening, and I said, "You see you are ruining me as well as my health," and he said, "Whenever you canal the branch I will put an opening." What was the use of canaling the branch? I didn't see any need of it at all. You say this underdrainer does drain the pond? Yes, sir; kept the drainer there—

" 'Court: When was that you had that conversation? A. 1906, I think it was.'

"It was error in holding that this was sufficient, for there is nothing in the testimony itself going to show any acts of wilfulness on the part of the defendant, but, on the contrary, when taken in connection with the testimony of Mr. Wilson, in reference thereto, to the effect that it would be useless to put in a drain, such as was desired, unless the

branch, which lay below the railroad company on the west, was opened so the water would run off, and when taken in connection, further, with the testimony of almost every witness, to the effect that a drain put under the tracks would not carry the water out of the borrow pits, and when taken further in connection with the fact that the testimony showed that the testimony of H. D. Moise and W. Loring Lee, as engineers, and the testimony of Mr. Thomas Wilson, showed that the railroad track was properly constructed, in reference to its duty to the public and in reference to the character of the ground over which it passed.

II. "There was error on the part of the Circuit Judge in admitting the testimony of Mr. J. W. Touchberry, in reference to J. J. Boswell, the section master, as follows:

"Question by Mr. DuRant, having reference to what Mr. Boswell said: 'What did he say? I asked him what he was going to do about filling it up,—that is, the track,—and he said, "I wrote to Capt. Wilson, and I reported to him every big rain was washing up the road, and I will put this waterway in so as to keep the water down," and he said, "Do you think that will keep the water off the piece of land?" and I said, "It will, if you will give it time." Well, it did go pretty fast, and I said, "Mr. Boswell, what speed is that water going?" and he said, "About forty miles an hour;" and it was just washing and jumping through, and even shaking the track where we were standing." '

"The error being that it was shown that Mr. Boswell was a section master only, and, as a matter of law, anything that he might say could not bind the defendant, such being beyond the scope of his authority.

III. "It was error on the part of the Circuit Judge in refusing to permit the defendant to offer in evidence the demurrers to the complaints, and amended complaints, and orders made thereon, inasmuch as they contained admissions of record which would have been against the interest

of the plaintiff and beneficial to the defendant, and to which it was entitled.

IV. "It was error on the part of the presiding Judge to so construe the complaint as to admit the proof that the plaintiff and his family were made sick while residing on the twenty-five-acre tract of land described in the complaint, and that the same was made unhealthy by reason of the negligent and wilful acts of the defendant in negligently and wilfully obstructing the flow of water, and it was error in admitting any testimony whatsoever going to show that the plaintiff or any member of his family was made sick while residing upon or while upon the twenty-five-acre tract of land, or that the condition of that tract of land was rendered unhealthy during the year 1906, or at any other time; the error being this: That the allegations of the complaint are that the plaintiff was residing upon a tract of thirty-nine acres of land since 1904, the said thirty-nine-acre tract of land being west of the railroad track and wholly disconnected with the twenty-five-acre tract of land, and defendant had no notice that it was called upon to answer for sickness occasioned or in any way connected with the residence upon the twenty-five-acre tract or its unhealthy condition, and it was error to admit the testimony of E. J. Touchberry, J. W. Touchberry, and other witnesses, in relation thereto, all over the objection of the defendant's attorneys; the following being the part of the testimony as to which error is alleged in admitting it:

"Testimony of J. W. Touchberry: 'Where did your son live that year? On the twenty-five acres. In the house shown on this diagram here? Yes, sir. Right down there close to the railroad? Yes, sir. How many members of his family? Three. Who are they? Himself, his wife and little daughter. Did Mr. E. J. Touchberry—you have already testified that of your own knowledge he became sick in that year? Yes, sir. What did he suffer from? Chills

and fever. Did you visit him while he was sick? Yes, sir. Was he sick much, or was it a slight attack?

" 'Mr. Purdy: We interpose the same objection to all these questions.

" 'Court: Yes, sir; the objection overruled.

" 'Mr. Purdy: On the same grounds as before.

" 'Were they slight attacks or pretty severe? Pretty severe, I think, sir. How long was he sick at that place? About, I suppose, two weeks or something like that. Then where did he go? As soon as he got able to go he went to Mr. Riggs'. Did you visit him at Mr. Riggs'? Yes, sir. Was he sick there also? Yes, sir. How long was he sick at Mr. Riggs'? I think about six or seven days. As soon as he was able to go he went back home. Now, his wife— was her condition of health good the first part of the year? Yes, sir. Did she become sick? Yes, sir; sick, too.

" 'Mr. Purdy: I interpose the same objection, for the same reason as before.

" 'Court: Objection overruled.

" 'When did she get sick? She got sick a little before he did. Was she sick up until the time he went to Mr. Riggs'? Yes, sir. Did she go at the same time? Yes, sir. Was she sick at Mr. Riggs' also? Yes, sir. How long was she sick there, or do you know? I don't know exactly. She stayed there the balance of the fall. You mean up until about the first of January? Yes, sir.'

"Testimony of E. J. Touchberry: 'Was any other member of your family sick that year? Yes, sir. Who was that? My little girl. How old was she at that time? About 6 or 7 months old. What was the matter with her? Chills and fever. She had chills and fever also? Yes, sir. A little baby? Yes, sir. Was any other member of the family—not of your immediate family, but that were on that place, much sick?

" 'Mr. Purdy: Of course, as an element of damages that could not be admitted.

" 'Court: It may be as a matter of evidence to show that other people got sick who were living near there. I think it competent, but can't go into details.

" 'Mr. Purdy: With reference to that matter, we interpose the same objection to that under the allegation of the second paragraph of the complaint, and the other paragraphs of the complaint, that no evidence can be given as to any sickness on this twenty-five acres, so far as any residence or actual possession was concerned, by the plaintiff or any one connected with him, for the reason that it alleged that he had his residence somewhere else.

" 'Court: How far from this twenty-five acres were you living when you left the twenty-five acres? About a quarter of a mile, or little more.

" 'How far was the nearest point of each one to the other? About 250 yards, I suppose, or less. It corners at that underdrainer on the thirty-nine acres.

" 'Court: You and your wife worked that twenty-five-acre tract? Yes, sir. The thirty-nine-acre tract is here (indicating)? Yes, sir. And the corner where—this cornered along there (indicating)? Yes, sir. And where is the twenty-five acres—over here and corners there? Yes, sir; corners in here. And the thirty-nine acres is over here and corners here? Yes, sir. And the twenty-five acres is over here and corners there at that place? Yes, sir. The thirty-nine acres is on the west side of the railroad? Yes, sir. And the twenty-five acres is on the east side of the railroad? Yes, sir. And this is the twenty-five acres we have been talking about? Yes, sir. I asked you if any other persons who were on that land there in 1906, after this embankment was put there, had chills and fever?

" 'Mr. Purdy: The same objection.

" 'Court: Note the objection. They worked on the twenty-five-acre tract.

" 'I had hands working on it that took fever then, and across on the far side a colored man and his wife lived

there, and they had chills and fever the whole year the same way.

" 'Court: That is not an element of damages, but just a matter of corroborative of your allegation to show the unhealthy condition.

" 'Was any one else on that twenty-five acres of land, of your family or your wife's family, that had chills and fever? No, sir. My wife's mother; she come and stayed a week and she took the fever. She took fever, too? Yes, sir. How long were you and your wife in bed with this fever? Yes, sir. How long were you in bed? I was in bed off and on pretty near all the time. I wasn't able to be up, and my wife was down in bed the biggest part of the time. Was that on this twenty-five-acre tract? Yes, sir.'

V. "That the presiding Judge erred in refusing the defendant's ninth request to charge, the same being a correct position of law applicable to the case at bar, the same being as follows:

" 'The jury is instructed that the plaintiff, Mr. E. J. Touchberry, having alleged that he is, and was since November 22, 1904, in possession of and living upon a tract of thirty-nine acres of land, more or less, lying west of the railroad, and having further described it as "the thirty-nine-acre house tract of the plaintiff above mentioned;" and having further alleged that prior to the entire obstruction of a watercourse by the railroad company in September, 1906, his residence upon said land was healthy, but that as a result of the obstruction the said place, last above referred to, was caused to become very unhealthy, and the plaintiff and the members of his family caused to be filled with malaria and to become sick and suffer for a long period of time, and still to suffer, with chills and fever and other disorders; and in his testimony stated that he was not claiming any damages for any unhealthy condition of the thirty-nine acres of land, or for any illness arising thereon, and having shown that he was in fact living upon a different tract of

land, not connected with the thirty-nine-acre tract, he cannot recover in this action for any illness of himself or any member of his family, or for the unhealthy condition of either tract of land.' "

*Messrs. Purdy & O'Bryan* and *Joseph F. Rhame,* for appellant. *Messrs. Purdy & O'Bryan* cite: *No statement made by section master can bind the defendant:* 28 S. C. 157.

*Mr. Charlton DuRant,* contra, cites: *There was evidence supporting punitive damages:* 74 S. C. 505; 83 S. C. 321. *Whether statements of section master was within the scope of his duty was for the jury:* 79 S. C. 288; 82 S. C. 467; 83 S. C. 533; 81 S. C. 451; 34 S. E. 83.

March 1, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, in overflowing his lands.

The jury rendered a verdict in favor of the plaintiff, for $200.00, and the defendant appealed upon exceptions, which will be reported.

The first question that will be considered is, whether there was error on the part of his Honor, the presiding Judge, in submitting to the jury, the question of punitive damages.

The testimony set out in the first exception, which raises this question, shows that the defendant was informed by the plaintiff, that it was injuring his lands, yet it took no steps to prevent such injury, thus tending to show a conscious disregard of the plaintiff's rights. This exception is, therefore, overruled.

The next question for consideration is, whether the Circuit Judge erred in admitting certain testimony of J. W.

Touchberry, as to a conversation or transaction with Boswell, the section master. The defendant made objection to the introduction of the testimony, on the ground "that he could not say or do anything, that would bind the railroad, because that is beyond the scope of his duty."

There was testimony to the effect, that it was the duty of the section master, to keep the roadbed in proper order.

The testimony was admissible, at least, for the purpose of showing, that the defendant had notice of the injury to the plaintiff's lands, as the conversation, or transaction, pertained to a matter, within the scope of the agent's employment.

The next question that will be determined is, whether the Circuit Judge erred, in refusing to allow the defendant, to introduce in evidence the order sustaining the demurrer to the complaint, on the ground that it contained certain admissions, against the interest of the plaintiff.

The only admission in the order was, that the complaint was demurrable.

We fail to see wherein this ruling was prejudicial to the rights of the appellant, especially as the complaint itself, was introduced in evidence.

As the appellant's attorneys have not argued the fourth and fifth exceptions, we deem it only necessary, to say, that this Court is satisfied with the construction, which the Circuit Judge placed upon the complaint

Affirmed.


MR. JUSTICE WOODS, *dissenting.* I dissent on the ground that there was no evidence of wilfulness or wantonness, and the Circuit Court should have charged, as requested, that punitive damages could not be recovered.